**SIGNED THIS: August 3, 2015**

_____
**Thomas L. Perkins**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RONALD R. BAUMAN, | ) | Case No.  12-81285 |
| | ) | |
| Debtor. | ) | |
| ——————————————————— | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| MIDWEST ASPHALT REPAIR, INC., | ) | Case No.  12-81287 |
| | ) | |
| Debtor. | ) | |

O P I N I O N

Before the Court is the motion filed by A. Clay Cox, as Chapter 7 Trustee

(TRUSTEE), for the estates of Ronald R. Bauman and Midwest Asphalt Repair, Inc., for

substantive consolidation of the two estates and objections filed by Heartland Bank and

Trust Company, Scott Hostetler and Midstate Asphalt Repair, Inc., and Donald Bauman

(collectively referred to as the "OBJECTORS").

*MIDWEST BANKRUPTCY*

Midwest Asphalt Repair, Inc. (MIDWEST) filed a Chapter 7 petition on May 24, 2012, listing the Debtor, Ronald Bauman (DEBTOR), as its President and 100% shareholder. The Statement of Affairs discloses that in January, 2011, a secured creditor, Heartland Bank and Trust Company repossessed four semi-tractors. Other assets of MIDWEST, including a motor home, roller and crack sealer, 2005 Kenworth, and 1989 Ford LN9000 Tractor, were transferred or sold later in that same year. When the petition was filed, the only scheduled asset of value, other than a cashier's check and bank account totaling about $5,000, was a 2009 GMC truck valued at $25,000. MIDWEST scheduled no secured debts, but listed priority claims of $106,235.64 (as amended) and a single unsecured claim in the amount of $12,884.66. The public records disclose that MIDWEST was incorporated on March 13, 1998, and was involuntarily dissolved on August 9, 2013. MIDWEST had operated a successful road repair business, earning total income in 2010 of $921,595.

With approval of the Court, the TRUSTEE sold the 2009 GMC for $9,000 at private sale. The TRUSTEE employed an accountant and filed the corporate income tax returns for MIDWEST for 2012, paying the tax due the State of Illinois. The TRUSTEE also retained counsel to investigate and prosecute transfer avoidance actions. Based upon their investigation, the TRUSTEE and his attorney quickly developed a working theory that the DEBTOR had intentionally dissipated the assets of MIDWEST to keep them out of the hands of his ex-wife, Diane.

In June, 2013, the TRUSTEE filed an adversary complaint against the DEBTOR'S father, Donald Bauman (DONALD), seeking to recover various payments made by the

DEBTOR totaling $168,053.48, as fraudulent transfers.[1]   In July, 2013, the TRUSTEE

employed a CPA as an expert witness. The TRUSTEE filed a second adversary proceeding

against DONALD in May, 2014, seeking to set aside as fraudulent, two transfers made by

checks totaling $62,736.65 payable to two separate entities doing business with MIDWEST,

alleging that those entities were used by the DEBTOR as a conduit to transfer those funds

to DONALD.  The TRUSTEE and DONALD reached a compromise in August, 2014,

whereby DONALD agreed to pay the TRUSTEE $150,000 in settlement of the two

adversary proceedings.[2]

The TRUSTEE also filed separate adversary proceedings against Barbara Jording

and Eugene Jording, seeking recovery in each proceeding of payments made to them

individually in the amount of  $9,000, as fraudulent transfers.  The Jordings tendered the

full amount of the funds sought by the TRUSTEE and the adversary proceedings were

dismissed.

On September 23, 2014, the TRUSTEE filed a pleading captioned "Petition for

Authorization to Distribute Assets of Dissolved Corporation to Sole Shareholder."

Reporting that he had collected assets totaling $173,526, owed fees of $50,139.68 to his

attorney, and that claims had been filed in the amount of $64,539, the TRUSTEE, based on

the dissolution of MIDWEST in August, 2013, proposed to distribute the remaining balance

of funds to the bankruptcy estate of the DEBTOR, as sole shareholder of the dissolved

---

[1]Adv. No. 13-8034.  The TRUSTEE sought to recover  payments made on June 12, 2009, for $50,593.37, on October 14, 2009 for $39,095.31, for hauling rock; payments totaling $72,000 for rent on buildings; and a payment of $6,364.80 made on September 2, 2010 for rental of a pick-up truck.

[2]No objections to the compromise were made and an order was entered on September 3, 2014, approving it.

corporation.  In addition, and more important here, the TRUSTEE proposed to also

"distribute" to the DEBTOR'S estate, unasserted and/or unadjudicated transfer avoidance

claims arising under Chapter 5 of the Bankruptcy Code for wrongful transfers of

MIDWEST'S assets.  After a hearing, an order was entered on November 4, 2014,

authorizing the TRUSTEE to transfer any excess cash remaining in the estate following full

payment of all allowed claims to the TRUSTEE of the Chapter 7 bankruptcy estate of the

DEBTOR.  The Court denied the TRUSTEE'S request for authorization to "distribute" the

causes of action owned by MIDWEST'S estate relating to the alleged wrongful transfer of

the assets of MIDWEST, ruling that powers of avoidance are assets that belong to the

bankruptcy estate, not the debtor.[3]  *See In re Cybergenics Corp.,* 226 F.3d 237, 247 n.16 (3rd

Cir. 2000); *Klingman v. Levinson,* 158 B.R. 109, 113 n.1 (N.D.Ill. 1993).

*RONALD BAUMAN (DEBTOR) BANKRUPTCY*

Ronald Bauman also filed a Chapter 7 petition on May 24, 2012, the same day as

MIDWEST.  According to the Statement of Affairs, as amended, the DEBTOR retired from

farming in 2009, after thirty years.  The DEBTOR was listed as the sole shareholder of

MIDWEST, in operation from June, 1998 to June, 2011.  The DEBTOR separated from his

spouse, Diane, in January, 2009, and their marriage was dissolved on February 24, 2012.

At the time of the filing, the DEBTOR represented that he did not conduct personal farming

operations but was employed by DONALD, his father, as a farmhand, with a gross

monthly wage of $3,450.20.  The DEBTOR, having much more debt than MIDWEST,

---

[3]In denying the petition, the Court noted that the avoiding powers are no longer exercisable once all creditors are paid
in full, as is the case in MIDWEST'S case.

scheduled priority claims of $102,957.80 and unsecured claims totaling $1,309,663.10. Among the unsecured creditors listed were the DEBTOR'S former spouse at $697,529.50; Goodfield State Bank at $250,000; an attorney at $99,776.95; and Mike and Sherril Tanner at $150,000.

The TRUSTEE received proceeds of $3,253 from the sale of a motor home, which the DEBTOR owned jointly with his former spouse. No objections to his discharge were filed and the DEBTOR was granted a discharge on October 17, 2012. That same month, the TRUSTEE filed a complaint against DONALD, Adv. No. 12-8064, seeking to recover the transfers of ownership of three insurance policies to DONALD, as fraudulent. Based upon a determination that the total cash value of the transferred insurance policies was $8,754.90, the TRUSTEE accepted DONALD'S offer to make a cash payment in that amount in settlement of the complaint. Through an arrangement worked out with the DEBTOR'S former spouse, the TRUSTEE exchanged the DEBTOR'S partial interest in a trust for a grant of twenty acres in a seventy-three acre parcel, which the TRUSTEE and the DEBTOR'S former spouse agreed to sell after the exchange, with the TRUSTEE to receive 60/73rds of the net proceeds of the sale.[4]

The TRUSTEE filed separate adversary proceedings against Barbara Jording and Eugene Jording, seeking recovery in each proceeding of payments made to them individually in the amount of $11,000, as fraudulent transfers. As they had in the MIDWEST case, the Jordings tendered the full amount of the funds sought by the TRUSTEE and the adversary proceedings were dismissed.

---

[4]At the time of the filing of the bankruptcy, the DEBTOR owned 40 of the 73 acres and his former spouse owned 33. According to the report of sale, which was approved by the Court, the real estate sold for a gross sale price of $844,905 and disbursements were made totaling $416,157.93.

On June 20, 2013, the TRUSTEE filed a second complaint against DONALD, Adv. No. 13-8033, seeking to recover two payments made to DONALD totaling $71,056.65, as fraudulent transfers.[5]  DONALD filed a motion to dismiss the complaint.  With Court approval, the TRUSTEE employed a CPA as an expert witness.  The motion to dismiss remained pending for over a year while the TRUSTEE continued his investigation of transfers by the DEBTOR, and while the parties attempted to negotiate a "global" settlement.

The TRUSTEE prepared the 2012 federal and state income tax returns and obtained authorization to pay the federal taxes due of $28,011 and the state taxes of $7,241.  In October, 2013, the TRUSTEE filed a complaint seeking to revoke the DEBTOR'S discharge pursuant to section 727(d)(1), as having been obtained by fraud. As amended, the complaint alleges that the DEBTOR'S statement that he was not actively engaged in farming at the time of the petition was false and that he surreptitiously continued his farming operation during and after 2010 by utilizing the bank accounts of DONALD and his son Brock.  In that complaint, the TRUSTEE also contends that a residence in Wisconsin, purchased in the name of the Jordings, was in fact purchased by the DEBTOR for his benefit, with property of the bankruptcy estate.

Meanwhile, the TRUSTEE prepared the 2013 federal and state income tax returns for the bankruptcy estate and sought and obtained authorization to pay the federal taxes due of $100,975 and the state taxes of $34,395.  In May, 2014, the TRUSTEE filed a fourth

---

[5] The first payment was made to DONALD on October 18, 2009, in the amount of $11,056.65, purportedly for hauling lime.  The second payment was made on November 27, 2009, purportedly for cash rent for farmland.

6

complaint against DONALD, Adv. No. 14-8030, seeking to avoid as fraudulent certain transfers totaling $645,479, alleging that the DEBTOR caused grain proceeds from his farming operation to be deposited in Brock's checking account from March 16, 2010 to December 6, 2011, which proceeds were then transferred to DONALD'S checking account. The TRUSTEE seeks to recover those transfers from DONALD as the initial transferee or the beneficiary of the transfer.  The TRUSTEE also seeks to avoid as fraudulent the transfer of farm equipment having a fair market value of $747,131 in exchange for payment of $454,250, and to recover the difference of $292,881 from DONALD, representing the damage to the estate.[6]

In October, 2014, the negotiations between the DEBTOR, DONALD and the TRUSTEE resulted in a settlement agreement whereby the DEBTOR agreed to waive his discharge, resulting in dismissal of the third adversary complaint against the DEBTOR. The second adversary proceeding brought against DONALD was settled for a payment of $45,000.  As part of that agreement, the TRUSTEE agreed not to pursue any other transfers and causes of action against DONALD that were not already a part of the two then remaining adversaries, Adv. No. 14-8030, discussed above, and Adv. No. 14-8031, discussed below.  The TRUSTEE  further agreed not to amend those complaints to add additional transfers.

---

[6]The TRUSTEE has filed yet another adversary complaint, Adv. No. 15-8029, against DONALD, for turnover of the value of certain improvements constructed by the DEBTOR and Diane on real estate held in trust, in which DONALD held a life estate and the DEBTOR held  a remainder interest.  The TRUSTEE acknowledged that an amended complaint was required and an order was entered on July 1, 2015, granting DONALD'S motion to dismiss the original complaint and the TRUSTEE was given twenty-one days to file an amended complaint.

**ADV. NO. 14-8031, *TRUSTEE v. DONALD, MIDSTATE, HOSTETLER, HEARTLAND,***
**AND FAUPEL**

On May 22, 2014, two days before expiration of the applicable limitations period, the

TRUSTEE filed a complaint against the OBJECTORS and an attorney who acted on their

behalf at various times, seeking to recover transfers totaling $322,000, representing the fair

market value of tangible operating assets of $172,000 and goodwill of $150,000, as

fraudulent conveyances, alleging that the DEBTOR commingled the assets of MIDWEST

with his own, as well as with DONALD'S, that MIDWEST was the DEBTOR'S alter ego,

and that the DEBTOR wrongfully depleted MIDWEST of its assets for his personal benefit.

The TRUSTEE alleges that the DEBTOR caused MIDWEST to transfer the operating assets

and goodwill of MIDWEST to Hostetler, the former operations manager of MIDWEST, and

Midstate, a corporation formed by Hostetler, which carried on the same business at the

same facility.   The alleged "transfers" resulted from a series of events, beginning with

Heartland's repossession of MIDWEST'S collateral upon its default and the purchase of the

assets by Hostetler and Midstate from Heartland, who provided financing for the purchase

and an operating loan of $100,000.

The OBJECTORS moved to dismiss the complaint on the ground that the TRUSTEE

had failed to state a claim for which relief can be granted, contending that the TRUSTEE

failed to allege a transfer of an interest in property of the DEBTOR, a fundamental element

for an avoidance of a fraudulent transfer action.   The TRUSTEE, premising his complaint

on the theory that MIDWEST was the DEBTOR'S alter ego and not a separate and distinct

legal entity, alleged that the transfers by MIDWEST were *de facto* transfers by the DEBTOR.

Upon review of this Court's ruling in *In re Duckworth*, 2012 WL 4434681 (Bankr.C.D.Ill

2012), rejecting a similar argument that the separate existence of related entities alleged to be alter egos should be disregarded, he sought leave to file an amended complaint. The amended complaint, filed on October 28, 2014, alleges that the DEBTOR, instead of transferring his stock in MIDWEST, transferred his "equitable and beneficial interest in the property of [MIDWEST]" to Midstate and Hostetler, in furtherance of his fraudulent scheme to dissipate assets in anticipation of the property allocation in the divorce proceeding. The amended complaint includes claims against DONALD, Heartland and Faupel for conspiracy and for aiding and abetting under Illinois law. The OBJECTORS have filed motions to dismiss the amended complaint and the Court has the matter under advisement.

### *SUBSTANTIVE CONSOLIDATION*

The TRUSTEE filed motions in each case on January 1, 2015, to substantively consolidate the bankruptcy cases filed by MIDWEST and the DEBTOR. The TRUSTEE contends that substantive consolidation is necessary because (1) the affairs of the DEBTOR and MIDWEST are so entangled that consolidation will benefit all creditors; (2) the creditors of the DEBTOR and MIDWEST dealt with them as a single economic unit and did not rely on their separate existence in extending credit; and (3) it is necessary to avoid harm to the creditors of the DEBTOR, while not being prejudicial to creditors of MIDWEST. The TRUSTEE maintains that consolidation has only positive effects here and the Court need not concern itself with the potential prejudice that substantive consolidation ordinarily visits on particular creditors. DONALD opposes the TRUSTEE'S motions, asserting that a bankruptcy court lacks the authority to order substantive consolidation and that it is clearly contradictory to express provisions of the Bankruptcy Code. Alternatively, and

along with Heartland, Hostetler and Midstate, DONALD contends that the application of the doctrine is not warranted in this matter.

## ANALYSIS

Substantive consolidation in bankruptcy, not expressly provided for by the Bankruptcy Code, is a judicially created doctrine by which the assets and liabilities of separate legal entities are consolidated and treated as if they were merged into a single survivor.[7] *In re Owens Corning*, 419 F.3d 195 (3d Cir. 2005). The consolidated assets create a single fund from which all of the claims against the consolidated debtors are satisfied and inter-entity claims are extinguished. *Genesis Health Ventures, Inc. v. Stapleton (In re Genesis Health Ventures, Inc.)*, 402 F.3d 416, 423 (3d Cir. 2005). The court's authority to undertake the remedy is premised upon the general equitable power conferred by section 105(a) of the Bankruptcy Code. *In re Cyberco Holdings, Inc.*, 734 F.3d 432 (6th Cir. 2013). Though it bears resemblance to the alter ego doctrine, it is not a matter of state law, but a unique alternative only available in bankruptcy courts. *In re Petters Co., Inc.*, 506 B.R. 784 (Bankr.D. Minn. 2013); *In re Pearlman*, 462 B.R. 849 (Bankr.M.D.Fla. 2012).[8] Courts unanimously agree

---

[7]As many courts recognize, the Bankruptcy Code provides for substantive consolidation in two limited circumstances. First, section 1123(a)(5)(C) provides for merger or consolidation of a chapter 11 debtor with one or more persons in the context of a confirmed plan of reorganization. The Bankruptcy Code provides for consolidation of joint cases filed by spouses, if determined appropriate by the court. In addition, Rule 1015 of the Federal Rules of Bankruptcy Procedure provides for joint administration of the estates of (1) a husband and wife; (2) a partnership and one or more of its general partners; (3) two or more general partners; or (4) a debtor and an affiliate. While joint administration permits a trustee to administer two cases together, the individual estates retain their status as legally separate entities, and the rights of the debtors and their creditors are not altered.

[8]The court in *Owens Corning* contrasted the remedy of substantive consolidation with other remedies which protect creditors against disregard of the corporate form, placing substantive consolidation at the far end of the spectrum, stating:

> 'Piercing the corporate veil' makes shareholders liable for corporate wrongs. Equitable subordination places bad-acting creditors behind other creditors when distributions are made. Turnover and fraudulent transfer bring back to the transferor debtor assets improperly transferred to another (often an affiliate). Substantive consolidation goes in a direction different (and in most cases further) than any of these remedies; it is not limited to shareholders, it affects distribution to innocent creditors, and it mandates more than the return of specific assets to the predecessor owner. It brings all the assets of a group of entities into a single survivor. Indeed, it merges liabilities as well.

that it is an extraordinary remedy because the substantive rights of parties are necessarily affected.  *In re Doctors Hosp. of Hyde Park, Inc.*, 507 B.R. 558 (Bankr.N.D.Ill. 2013).  Mere benefit to the administration of a bankruptcy estate, by simplifying the case or avoiding other issues, is not a justification for substantive consolidation.  *Owens Corning,* 419 F.3d at 211. While substantive consolidation may be used defensively to remedy the identifiable harms caused by entangled affairs, it may not be used offensively, for example, to disadvantage tactically a group of creditors or to alter the rights of parties they would otherwise enjoy absent consolidation.  *Id.*

The Seventh Circuit Court of Appeals has not directly addressed the doctrine of substantive consolidation.   Among the circuit courts that have addressed it, the predominant view is that announced by the Third Circuit in *Owens Corning,* under which proponents of substantive consolidation have the burden of showing one or the other of two alternative rationales for consolidation:

(A)   that prepetition, the two debtors disregarded their separateness so significantly as to cause creditors to rely on the breakdown or absence of separateness and treat them as one and the same legal entity; or

(B)   that postpetition, their assets and liabilities are so hopelessly commingled that unscrambling them is prohibitive and would harm all creditors.

419 F.3d at 211.[9]

The first rationale is meant to protect in bankruptcy the prepetition expectations of creditors misled by the debtors' actions into perceiving incorrectly that two separate

---

[9]The Third Circuit cited with approval *Union Sav. Bank v. Augie/Restivo Baking Co., Ltd., (In re Augie/Restivo Baking Co., Ltd.,* 860 F.2d 515 (2nd Cir. 1988)), and rejected the alternative reasoning set forth in *In re Auto-Train Corp., Inc.,* 810 F.2d 270 (C.A.D.C. 1987).  This Court agrees with *Owens Corning.*

entities were one. *Id.* at n.19. In order to establish a *prima facie* case, the proponent of

consolidation (usually a creditor) must prove:

1.  that the debtors disregarded their separateness;

2.  thereby creating contractual expectations of creditors that they were dealing with the debtors as an indistinguishable entity;

3.  that creditors actually relied on the debtors' supposed unity; and

4.  that such reliance was reasonable.

*Id.* at 212.

The second rationale is at bottom one of practicality. *Id.* at n.20. The proponent of

consolidation (usually a chapter 7 trustee) must prove that the ownership of substantial

assets, as between the two debtors, cannot be correctly determined and/or that the

liabilities cannot be correctly assigned between the debtors.

Though the Seventh Circuit has not directly addressed the doctrine of substantive

consolidation, DONALD contends that based on the court's rejection of section 105(a) as

an independent source of substantive authority in *In re Kmart Corp.*, 359 F.3d 866, 871 (7th

Cir. 2004), but rather as a power to be exercised within the confines of the Bankruptcy

Code, this Court should infer that it would determine as a matter of law that bankruptcy

courts are without authority to order the remedy of substantive consolidation. It is not

necessary to predict what the Seventh Circuit might do since even assuming that the Court

has the authority to grant a motion for substantive consolidation, it is not warranted here.

Although the TRUSTEE makes the assertion that creditors of the DEBTOR and

MIDWEST dealt with them as a single economic unit and did not rely on their separate

identity in extending credit, nothing in the record supports that assertion. The TRUSTEE

submits certain correspondence with Heartland Bank in an effort to demonstrate that Heartland did not recognize the separate identities of the DEBTOR, Diane and MIDWEST, a proposition that is absurd on its face.  The correspondence establishes that the Bank debt was personally guaranteed by the DEBTOR and Diane, which is proof that the Bank dealt with them as individuals whose personal liability was required and obtained, separate and apart from the liability of MIDWEST, the primary borrower.

The only joint creditor listed in both cases is the Illinois Department of Labor, for unpaid wage claims made against MIDWEST.[10]  As Hostetler and Midstate point out, pursuant to section 13 of the Illinois Wage Payment and Collection Act, officers of a corporation who knowingly permit the corporation to violate the provisions of the Wage Act by failing to pay wages, incur personal liability.  820 ILCS 115/13.  Any liability of the DEBTOR for MIDWEST'S unpaid wages is statutory, and does not advance the TRUSTEE'S case for substantive consolidation.

The TRUSTEE also pays lip service to the idea that the financial affairs of the DEBTOR and MIDWEST are so hopelessly entangled as to warrant substantive consolidation.  The TRUSTEE admits, however, that he has had no difficulty ascertaining ownership of assets between the DEBTOR and MIDWEST.  He makes no allegation that the books and records of the DEBTOR and MIDWEST have not been kept separately or are in any way confusing.  According to the TRUSTEE, MIDWEST'S business shut down eighteen months before bankruptcy and substantially all of its assets were foreclosed on, liquidated or otherwise disposed of prior to filing.  Only four claims were filed in MIDWEST'S case,

---

[10]The claims in both cases were filed by the attorney for the DEBTOR and MIDWEST.

all by MIDWEST'S attorney on behalf of governmental entities.  Moreover, the TRUSTEE

had not previously expressed any difficulty "disentangling" the affairs of the DEBTOR and

MIDWEST, despite the cases having been on file since May, 2012.  The TRUSTEE attaches

a schedule of transfers prepared by his accountant showing a series of bank account

transfers between the DEBTOR, DONALD and MIDWEST.  The accountant's report

demonstrates, however, that the affairs of the parties have been successfully

"disentangled," to the extent that inter-account transfers would amount to entanglement

in the first place.

The TRUSTEE contends that the facts in the present cases are "virtually identical"

to those before the court in *In re Bonham*, 229 F.3d 750 (9th Cir. 2000), a case involving the

consolidation of a debtor with nondebtor entities, where corporations had been used in

furtherance of a Ponzi scheme and were determined to be mere instrumentalities of the

debtor, lacking any separate existence of their own.  That is hardly the case here where

MIDWEST operated a legitimate and profitable paving business, separate from the

DEBTOR'S farming operation.  No intricate corporate web was spun by the DEBTOR here

and no illegal activity occurred.  MIDWEST maintained its separate corporate identity and

the TRUSTEE has presented no evidence to support a conclusion that MIDWEST, by no

means a shell corporation, served as a mere conduit for the DEBTOR.

The TRUSTEE suggests that the Court should not question his judgment that

substantive consolidation is appropriate, given his particular vantage point as trustee in

both cases, affording him unique knowledge of the interrelationship between the financial

affairs and dealings of the DEBTOR and MIDWEST.  While there may be some instances

where "Trustee Knows Best" is a game winner, this is not one of them and the TRUSTEE'S position is easily rejected by this Court. *See In re Saint Catherine Hosp. of Pennsylvania, LLC,* 507 B.R. 812 (Bankr.M.D.Pa. 2014).

Raising the issue for the first time in his Response (Doc. 256), the TRUSTEE makes the argument that the Court should enter a *nunc pro tunc* order fixing the effective date of consolidation as the date of filing, in order to eliminate any question that the TRUSTEE'S actions against the OBJECTORS are timely, relying on *In re Auto-Train Corp., Inc.,* 810 F.2d 270 (D.C.Cir. 1987). That reliance is misplaced.

In *Auto-Train,* the bankruptcy court substantively consolidated a wholly owned subsidiary of a debtor in a pending chapter 11 case. Prior to the consolidation, the subsidiary was not a debtor in a bankruptcy case. The bankruptcy court's consolidation order declared the effective date of consolidation to be the date of the parent company's petition, even though the motion to consolidate was not filed until two months into the case and the order was not entered until several more weeks had gone by.[11] *See In re Auto-Train Corp.,* 53 B.R. 990, 994 (D.D.C. 1985). The *nunc pro tunc* order allowed the trustee to attack certain transfers as preferences made by the subsidiary within 90 days of the parent company's petition, even though the subsidiary was not ordered into bankruptcy until almost three months later. The court's rationale was that the subsidiary was an alter ego of the parent. *Id.* Thus, in *Auto-Train,* the consolidation order rests on the foundation that the two entities were not, in substance, separate entities, a proposition that is not true of the DEBTOR and MIDWEST.

---

[11]The issue of substantive consolidation was uncontested. The sole objecting party opposed only its *nunc pro tunc* application.

Moreover, the cases before this Court do not involve the highly unusual procedure of forcing a non-debtor entity into bankruptcy via substantive consolidation. MIDWEST and the DEBTOR filed individual petitions on the same day. MIDWEST already has its own petition date that determines the running of the applicable reach-back periods set forth in sections 547, 548 and the UFTA (through section 544). There is no cause for this Court to consider entry of a *nunc pro tunc* order. To the extent the TRUSTEE perceives that substantive consolidation might have some other benefit with respect to his avoiding powers, his perception is mistaken, as explained below.

The TRUSTEE argues that his motion has met with no creditor resistance, which the Court finds to be somewhat disingenuous given that not a single creditor even appeared or otherwise participated in any way in MIDWEST'S case, with the only claims having been filed by MIDWEST'S attorney. The TRUSTEE disregards the interests of the OBJECTORS, who are the parties who would potentially be harmed by the proposed substantive consolidation. The TRUSTEE makes no bones about the true purpose for consolidation being to preserve the causes of action to avoid the alleged fraudulent transfers of assets owned by MIDWEST, not by the DEBTOR.

The TRUSTEE relies upon the distinction made by the bankruptcy court in *In re Bonham,* 226 B.R. 56 (Bankr.D.Alaska 1998), between "claimants" – creditors who may benefit from consolidation, and "targets" – parties who are subject to transfer avoidance claims. The TRUSTEE characterizes the interests of the DEBTOR'S unsecured creditors as superior to those of the OBJECTORS as recipients of allegedly fraudulent transfers from

MIDWEST.  As the court in *Bonham* makes clear, however, the proponent of substantive consolidation must first carry the burden to justify the extraordinary remedy on traditional grounds; only then would the court weigh the competing interests to ascertain whether the benefits of consolidation outweigh the harm it inflicts on objecting parties.  226 B.R. at 95. Because the TRUSTEE cannot make even a *prima facie* case for substantive consolidation on traditional grounds, it is not necessary to proceed to balance the competing interests.

The Court does not agree with the general premise underlying the TRUSTEE'S motion, that substantive consolidation can be justified simply as a matter of equity in order to provide a remedy for the fraudulent dissipation of MIDWEST'S asset perpetrated by the DEBTOR.  Substantive consolidation is a non-statutory equitable remedy.  Courts must resist the temptation to implement an equitable remedy in a manner that contradicts or is inconsistent with a statutory scheme.  Wherever the rights of parties are clearly defined and established by law, "equity has no power to change or unsettle those rights." *Hedges v. Dixon County,* 150 U.S. 182, 192, 14 S.Ct. 71 (1893).  A court of equity may not create a remedy in violation of law.  *Rees v. City of Watertown,* 86 U.S. 107, 122, 1873 WL 16060, 22 L.Ed 72 (1873).  When the law determines the rights of respective parties, a court of equity is without power to decree relief that the law denies.  *In re United Air Lines, Inc.,* 438 F.3d 720, 737 (7th Cir. 2006)(Sykes, J., concurring in part and dissenting in part); *Charles Schwab & Co., Inc. v. Bank of America,* 2011 WL 1753805 (N.D.Cal. 2011).  The fact that bankruptcy is an equitable proceeding does not give a bankruptcy court (or a trustee) a "free-floating discretion to redistribute rights in accordance with his personal views of justice and

17

fairness, however enlightened those views may be." *Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 791 F.2d 524, 528 (7th Cir. 1986).

The fraudulent transfer statutes authorize avoidance of certain transfers of property owned by the debtor, but not by other, even if related, parties. *Matter of Newman,* 875 F.2d 668 (8th Cir. 1989) (transfer of machinery owned by partnership was not a transfer of property of estate of debtor who was one of the partners); *In re Cassis,* 220 B.R. 979 (Bankr.N.D.Iowa 1998) (fraudulent transfer of corporation's major asset could not be avoided in bankruptcy case filed by corporation's president and chief operating officer since asset was owned by corporation and not by debtor).

In *Miner v. Bay Bank & Trust Co.,* (*In re Miner*) 185 B.R. 362 (N.D.Fla. 1995), *aff'd without op.,* 83 F.3d 436 (11th Cir. 1996), a chapter 11 debtor brought an action to avoid as a fraudulent conveyance the foreclosure sale of real property owned by the debtor's wholly owned corporation.  Determining that no property of the debtor was transferred, the bankruptcy court held that section 548(a) was inapplicable.  On appeal, the debtor urged that the term "property of the debtor" should be construed liberally to include property of a corporation controlled by the debtor in order "to effectuate the purpose of the Bankruptcy Code," arguing that since the debtor controlled the corporation he therefore controlled its assets.  The district court rejected this argument and affirmed the bankruptcy court, holding that because the debtor had no ownership interest in the property transferred, he could not state a section 548(a) claim as a matter of law. 185 B.R. at 367.  The court applied Florida law that stockholders do not hold title to property owned by a

corporation.[12] Illinois law is the same, as shareholders, even sole shareholders, do not hold either legal or equitable title to the property of the corporation. *Winakor v. Annunzio,* 409 Ill. 236, 250-51, 99 N.E.2d 191 (1951).

Under the separate posture of these cases, the TRUSTEE'S standing to avoid the prepetition transfers of MIDWEST'S assets as fraudulent exists only for the benefit of MIDWEST'S creditors. Because of the paucity of claims filed in MIDWEST'S case, he now has more than enough money in the estate to pay all claims in full, a circumstance that ordinarily deprives a trustee of standing to pursue additional avoidance actions. The same is not true of the DEBTOR'S estate, where claims far exceed estate assets. The TRUSTEE'S proposal to substantively consolidate the estates can be seen as an effort to gerrymander the statutorily defined boundaries of the estates in a way that would accord him, so he argues, continued standing to pursue avoidance of the transfers of MIDWEST'S property, not for the benefit of MIDWEST'S creditors, but for the benefit of the DEBTOR'S creditors, primarily Diane. In this respect, the motion runs afoul of the *Owens Corning* admonition that substantive consolidation may not be used offensively to disadvantage tactically a group of interested parties. The disadvantage that the TRUSTEE would visit upon the OBJECTORS if consolidation were permitted is the elimination of the need to prove the first element of the fraudulent transfer avoidance action, that the property transferred was owned by the DEBTOR.

---

[12]The district court in *Miner* also determined that, under Florida law, dissolution of a corporation does not effect a transfer of title to its assets to shareholders. Although it has been held under Illinois law that dissolution of a corporation does operate to give shareholders an equitable interest in corporate assets, *see In re Lipuma,* 167 B.R. 522 (Bankr.N.D.Ill. 1994), MIDWEST'S administrative dissolution did not occur until August 9, 2013, more than a year after its bankruptcy filing and even longer after the disposition of the bulk of its assets.

Even if the TRUSTEE was able to establish the requisite justification for it, he oversells the effect of substantive consolidation on actions to avoid prepetition transfers. When two bankruptcy estates are substantively consolidated, the assets of each estate are pooled together. Claims allowed against either debtor are then satisfied from the common pool of assets created by consolidation. The separate bankruptcy estates are administered as if they were a single estate for the limited purpose of making distributions from the pooled assets to the holders of allowed claims. *In re Murray Industries, Inc.,* 125 B.R. 314, 317 (Bankr.M.D.Fla. 1991). Substantive consolidation serves to eliminate inter-company claims between the consolidated estates and to amalgamate duplicative claims filed by a single creditor against both debtors. *In re Pearlman,* 462 B.R. 849, 853 (Bank.M.D.Fla. 2012). It also eliminates constructively fraudulent transfer avoidance claims arising from one debtor's payment of a debt owed by another consolidated debtor. *Telesphere Liquidating Trust v. Galesi,* 246 B.R. 315, 321 (N.D.Ill. 2000). The latter is in recognition that the consolidated estate is augmented and diminished in equal amounts by the consideration received and the subsequent payment of the debt thereby incurred. *In re Deltacorp, Inc.,* 179 B.R. 773, 779 (Bankr.S.D.N.Y. 1995).

Claims for avoidance of prepetition (and pre-consolidation) transfers on a theory of actual fraud are not eliminated by substantive consolidation. *Id.* at 779-80. In this Court's view, such claims are not affected in any way by the consolidation of the bankruptcy estates. The applicable petition date does not change. Neither are the elements of the cause of action altered. A trustee must still prove each of the elements of the claim the same as if consolidation had not occurred. In this Court's view, a trustee who lacks standing to

prosecute an avoidance action arising in a case where estate assets exceed allowed claims, cannot reacquire standing via consolidation with an insolvent estate. This follows from the fact that substantive consolidation affects the distribution of assets, but not the collection of assets. Collection of assets still occurs as a function of each separate estate without regard to consolidation, except for the elimination of inter-company claims and constructively fraudulent transfer avoidance claims as described above.

Fraudulent transfer avoidance actions under sections 548 and 544 are limited, by statute, to recovery of prepetition transfers of property of the debtor. Operating to combine the estates of separate debtors, substantive consolidation is inconsistent with the individual ownership of property that the avoiding powers must recognize. That apparent inconsistency is readily reconciled, however, by simply clarifying that substantive consolidation operates only to combine the assets of the bankruptcy estates for distributional purposes. It does not serve to merge or consolidate the debtors themselves. Most significantly, substantive consolidation should not be deemed to have a retroactive effect of transforming property owned by an entity separate from a debtor into property of that debtor as of the prepetition date of the challenged transfer. *In re Cahillane,* 408 B.R. 175, 211-12 (Bankr.N.D.Ind. 2009). The facts of property ownership as they existed prepetition remain unchanged, as do the elements of proof under sections 548 and 544. Substantive consolidation would not permit the TRUSTEE to pursue avoidance of prepetition transfers of MIDWEST'S property for the benefit of holders of allowed claims filed in the DEBTOR'S case. It would be a violation of due process if the effect of

substantive consolidation were construed as destroying defenses and rights that existed

prior to consolidation. *Murray Industries,* 125 B.R. at 317.

Substantive consolidation is not the uber-remedy that the TRUSTEE believes it

would be. In *In re Schwinn Bicycle Co.*, 205 B.R. 557 (Bankr.N.D.Ill. 1997), the court

substantively consolidated Schwinn with several of its subsidiaries. A preference

defendant argued that consolidation should permit it to assert a new value defense by

aggregating all new value it provided to the various entities. The court characterized the

argument as follows:

> The Defendant asserts not merely that the Court's December 22, 1993,
> Consolidation Order should have retroactive effect back to the Petition Date
> despite prospective application by its terms, but also that it should be
> effective to warrant treating the several separate Debtors as if they had
> actually merged prior to or during the preference period.

The court easily rejected the argument as "misplaced," recognizing that a trustee's

avoiding powers, and the defenses thereto, are determined by the transactions as they

actually occurred between creditors and the separate debtors as they existed during the

prepetition period, unaffected by an order for substantive consolidation entered during a

subsequently filed bankruptcy case. The court held that substantive consolidation of the

estates did not require or permit the debtors to be treated as a consolidated entity in

determining the extent of new value advanced by the creditor. This Court agrees with that

reasoning.

Accordingly, the TRUSTEE'S motions for substantive consolidation will be denied.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance

with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

### ###